UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 2: 10-39-DCR |
| | ) | Civil Action No. 2: 11-7191-DCR |
| V. | ) | |
| | ) | |
| JASON L. WEBB, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Movant Jason Webb is a former methamphetamine manufacturer. He was indicted by a federal grand jury on June 10, 2010. After admitting to his crime, Webb was sentenced to a term of incarceration of 150 months, to be followed by a term of supervised release of five years. [Record No. 50] Webb did not file a direct appeal. Instead, nearly one year after his sentencing hearing, Webb filed a *pro se* motion to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255. [Record No. 59] In relevant part, Webb claims that his attorney provided ineffective assistance of counsel by failing to file a notice of appeal as he had directed.[1]

For the reasons discussed below, Webb's motion will be denied. Further, a Certificate of Appealability will not be issued with respect to any issue raised by the defendant/movant.

---

[1] Webb states that he requested that a notice of appeal be filed to challenge three sentencing issues: (1) the drug quantity attributed to him; (2) use of the 2009 United States Sentencing Guidelines, as opposed to the "more favorable" 2010 amendments in effect on the date of sentencing; and (3) the points assigned in calculating his Criminal History Category under the United States Sentencing Guidelines. [*See* Record No. 59, p. 3.] As discussed below, each assertion of error is without merit.

**I**.

On November 21, 2011, the Court conducted a preliminary review of Webb's habeas motion and directed that he show cause why his motion should not be dismissed based on the waiver provision contained in his written Plea Agreement. [Record No. 60] Webb filed his response to that order on December 19, 2011. In relevant part, Webb argues that the waiver provision of the Plea Agreement should not be enforced because his attorney and the Court failed to explain it "exact nature" of this part of the document before it was signed. Therefore, he contends the waiver provision is unenforceable. [Record No. 61]

Consistent with local practice, this matter was referred to United States Magistrate Judge J. Gregory Wehrman for consideration pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge issued his Report and Recommendation on January 12, 2012. [Record No. 65] Based on his review of the record and the applicable law governing the motion, the magistrate judge recommended that Webb's motion be denied. Webb did not filed timely objections to the Report and Recommendation.

Although this Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Further, a general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Sec't of Health and Human Svcs.*, 932 F.2d 505 (6th Cir. 1991). In the present case, Webb has waived any objections to the magistrate

judge's Report and Recommendation. Notwithstanding this waiver, the Court has proceeded to review the specific issues raised in his habeas motion. After review, the Court finds each issue to be without merit.

## II.

### A.    The Waiver Provision Contained in Webb's Plea Agreement is Enforceable.

In the present case, the magistrate judge recommended that the relief requested by Webb be denied based on specific language of the waiver provision contained in his written Plea Agreement. After outlining the facts relating to the defendant's conviction, Magistrate Judge Wehrman identified the standard applicable to Webb's § 2255 motion and noted that, "[a] waiver of the right to file for post-conviction relief under §2255 is enforceable regarding claims of ineffective assistance of counsel, unless 'the ineffective assistance of counsel claims relate directly to the plea agreement or the waiver.'" (*quoting Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001)). [Record No. 65, p. 3] And where a defendant has waived the right to collaterally attack his conviction and sentence, he must raise a challenge that goes to the validity of the waiver itself, such as a claim that it was involuntary or the product of ineffective assistance of counsel.

Here, Webb does not present any meritorious argument directly relating to the validity (*i.e.*, the knowing and voluntary nature) of the plea agreement or the waiver clause. Instead, the record unambiguously demonstrates that the defendant was specifically advised by the undersigned during his re-arraignment hearing of his rights under Rule 11 of the Federal Rules of Criminal Procedure. Further, Webb has not demonstrated that his representation was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), as it pertained to negotiation of the waiver provision. Instead,

the facts of this case establish that the defendant was fully advised of the effect of the waiver provision regarding his appellate rights.

Webb indicated to the Court during his re-arraignment hearing that he fully understood the import of his agreement and that he was satisfied with the representation provided by his attorney. Webb has offered no evidence or legitimate argument that his decision to enter a guilty plea was based on erroneous legal advice and that he would have insisted on going to trial but for this erroneous advice. Instead, the focus of his claim of ineffective assistance of counsel is directed to the alleged failure to file a notice of appeal following the sentencing hearing and in light of the fact that Webb had knowingly and voluntarily waived the right to file such an appeal. However, the failure to file a frivolous appeal in the face of a knowing and voluntary waiver of the right to appeal does not constitute ineffective assistance of counsel.

### B. The Substantive Issues Raised by Webb Are Without Merit.

Notwithstanding the enforceable waiver provision contained in his Plea Agreement, Webb seeks to argue that: (1) the drug quantity attributed to him was incorrect; (2) in calculating his guideline range, the Court incorrectly used 2009 United States Sentencing Guidelines, as opposed to the "more favorable" 2010 amendments in effect on the date of sentencing; and (3) the points assigned in calculating his Criminal History Category under the United States Sentencing Guidelines were incorrect. [*See* Record No. 59, p. 3.] Each of these claims is without merit.

#### 1. The Drug Quantity Attributed to Webb

Webb's written Plea Agreement contains the following provision regarding his conduct and the drug quantity attributed to him:

-4-

      a.      On April 13, 2010, the Defendant was at a BP station in Sparta, Gallatin County, Kentucky. Officers approached him and located items used to manufacture methamphetamine in the vehicle that the Defendant had been driving.

      b.      The Defendant admitted that he had cooked methamphetamine the previous day and that he was in the process of obtaining items to manufacture additional quantities of methamphetamine. He indicated that he had been manufacturing methamphetamine for 9 or 10 months at a rate of approximately one ounce per week, sometimes more.

      c.      The Defendant indicated that [Co-Defendant] Clayton Walker had supplied him with items used to manufacture methamphetamine and that Walker had been selling methamphetamine manufactured by Webb for some time. Webb indicated that they had been receiving $70.00 to $130.00 per gram of methamphetamine.

      d.      On March 22, 2010, Clayton Walker sold .372 of a gram of a substance containing methamphetamine to a confidential informant for $90.00 in Covington, Kentucky.

      e.      On March 24, 2010, Clayton Walker sold .894 of a gram of a substance containing methamphetamine to a confidential informant for $200.00 in Covington, Kentucky.

      f.      On March 30, 2010, Clayton Walker sold 4.438 of a gram of a substance containing methamphetamine to a confidential informant for $600.00 in Covington, Kentucky.

      g.      On April 7, 2010, Clayton Walker sold 4.177 of a gram of a substance containing methamphetamine to a confidential informant for $600.00 in Covington, Kentucky.

      h.      Jason Webb manufactured and supplied each of these quantities of methamphetamine to Clayton Walker.

      i.      It was reasonably foreseeable to the Defendant that members of the conspiracy were responsible for manufacturing at least 500 grams of a substance containing methamphetamine but less than 1.5 kilograms of a substance containing methamphetamine.

[*See* Record No. 49, Plea Agreement, pp. 2-3.]

Based on a conversion rate of one ounce = 28.35 grams and Webb's admission that he manufactured at least one ounce per week for nine to ten months, Webb would be responsible for

a conservative estimated amount of a methamphetamine mixture exceeding 1,000 grams.[2] Further, during his re-arraignment hearing held on August 18, 2010, Webb admitted that the drug calculations contained in his Plea Agreement were correct.

> [THE COURT] Can you tell me in your own words what it was that you did to be guilty of that charge?
>
> THE DEFENDANT: All I can say is I did what it says there and I'm sorry for what I did, and that's all I can say, sir.
>
> THE COURT: All right. I know you've had a chance to review your plea agreement, that's the document we went over just a little bit earlier. Your plea agreement has a factual statement in it, it's contained in paragraph three, and there are a number of subparagraphs, (a) through (i). Let me make sure that you've had a chance to review that paragraph and those subparts with your attorney. Is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is the information that's contained in the factual statement, paragraph three of the plea agreement, true and correct to the best of your knowledge and belief?
>
> THE DEFENDANT: Yes, sir, it is.
>
> THE COURT: Now, the – that particular paragraph also has information about the specific drug quantity for which you've indicated would apply to you in this particular case. Is that information correct as well?
>
> THE DEFENDANT: Yes, sir, it is.

[*See* Record No. 63, pp. 22-23.]

---

[2] This calculation is based on production of one ounce per week for 36 weeks multiplied by 28.35 grams per ounce (36 x 28.35 = 1,020.6 grams).

In short, based on the quantity of methamphetamine referenced in the Plea Agreement and acknowledged by Webb, he cannot avoid responsibility for over 1,000 grams of a mixture or substance containing methamphetamine. His current arguments to the contrary are without merit.

### 2. Application of the Relevant Guideline Manual

Webb was sentenced on November 22, 2010. Therefore, pursuant to United States Sentencing Guideline § 1B1.11, the 2010 edition of the United States Sentencing Guideline Manual was used to determine Webb's guideline range. 18 U.S.C. § 3553(a)(4)(A). However, the drug quantity table contained in both the 2009 and 2010 guideline manuals indicates that a base offense level of 32 is assigned to a drug quantity of at least 500 grams but less than 1.5 kilograms of a mixture or substance containing methamphetamine. (*See* United States Sentencing Guideline Manual, § 2D1.1 [Drug Quantity Table], 2009 and 2010 editions.) Webb seeks to avoid this conclusion by arguing that he should only be responsible for the quantity of drugs purchased by the confidential informant. However, this argument ignores the fact that the quantity of drugs manufactured for nine to ten months was also properly attributed to him. Thus, Webb's Base Offense Level was properly determined to be 32. Applying a three level reduction for acceptance of responsibility, his Total Offense Level was properly found to be 29. The Fair Sentencing Act of 2010[3] does not alter this result.

### 3. Webb's Criminal History Score Was Properly Calculated.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office reflected that Webb had twelve criminal history points, placing him in Criminal History V

---

[3] In essence, this act relates to quantities of crack cocaine used to calculate a defendant's sentencing guideline range.

for purposes of calculating his guideline range.  At sentencing, Webb objected to the inclusion of one conviction and resulting sentence of five years.[4]  More specifically, he contended that the underlying conviction was for a misdemeanor offense and should not have resulted in three points being added to his criminal history point total.  The relevant section of the PSR indicates as follows:

| 38. | 03/20/03 (Age 28) | Ct. 1: Driving on DUI Suspended License, 2nd Offense w/in 5 years, Ct. 2: Operating Under Influence of Alcohol/Drugs, Ct. 3: Speeding; Gallatin County, KY, Circuit Court; Case No. 03-CR-00023 | 10/04/03: Guilty. Ct. 1: Sentenced to 5 years prison, suspended and placed on 5 years probation.  Ct. 2: 12 months jail, suspended, a $1,000 fine and Ct. 3: Fine.  03/28/05: Probation violation, sentenced to 5 years prison.  Released to parole 05/17/09.  Final release 06/06/10. | 4A1.1(a) | 3 |

[PSR, p. 11, ¶38]

The descriptive information provided in connection with this paragraph further indicates that this state conviction resulted from a traffic stop in Gallatin County.  After determining that Webb's license had been suspended, a portable breath test was administered, indicating a blood alcohol level of .107.  Webb was sentenced to five years of incarceration in October 2003, but the term was suspended and he was placed on probation for five years.  However, in March 2005, the term of probation was revoked based on a probation violation and his original sentence of five years of incarceration was reimposed.  Webb was released to parole on May 17, 2009, and received a final release from parole on June 6, 2010.

---

[4] Webb's argument on this issue consists of the following assertion: "the Movant beleives [sic] that the court incorrectly assigned him incorrect – Criminal History Points to place him in a higher Offense Level in order to enhance his sentence."  The Court considers this undeveloped argument waived. [*See* Record No. 59, p. 3.]

Based on his objection, United States Probation Officer Heidel obtained records from the Gallatin Circuit Clerk to confirm the conviction, date of arrest, and actual sentence imposed as reflected in paragraph 38 of the PSR. This and other relevant information concerning this conviction is contained in the Addendum to the PSR. The defendant did not rebut the factual accuracy of the information. Accordingly, during the sentencing hearing, the Court adopted the factual information and guideline calculations contained in the PSR and overruled Webb's objections to his criminal history score. Webb has not provided any information indicating that this determination was incorrect.

Finally, with respect to the issues raised by Webb, a Certificate of Appealability will not issue because he has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Further, no jurist of reason would debate whether Webb's § 2255 motion states a valid claim. It does not.

### III.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. The magistrate judge's Report and Recommendation [Record No. 65] is **ADOPTED** and **INCORPORATED** herein by reference;

2. Movant/Defendant Jason Webb's motion to vacate, set aside or correct his sentence [Record No.59] is **DENIED** and his claims are **DISMISSED** with prejudice;

3. A Certificate of Appealability shall not issue because the movant/defendant has not made a substantial showing of the denial of any substantive constitutional right;

4.     Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent/Plaintiff United States of America.

This 3rd day of February, 2012.



Signed By:
Danny C. Reeves   DCR
United States District Judge